# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| TRANSWESTERN PIPELINE COMPANY, LLC, | 2:07-cv-02321 JWS |
| | 2:07-cv-02322 JWS |
| Plaintiff, | 2:07-cv-02323 JWS |
| | (Consolidated) |
| vs. | |
| | ORDER AND OPINION |
| 3.51 ACRES, MORE OR LESS, OF PERMANENT EASEMENT LOCATED IN PINAL COUNTRY, et al., | [Re: Motion at Docket 118] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 118, plaintiff Transwestern Pipeline Company, LLC ("Transwestern") requests an order precluding defendants' proffered expert H. Pike Oliver from testifying or offering his expert report regarding severance damages. At docket 119, defendants ABCDW Trust, LLC, Dan Thealander, Vanderbilt Farms, LLC, and Irvine Land Partners, LLC ("defendants") oppose the motion. Transwestern replied at docket 125. Oral argument was requested, but it would not assist the court.

## II.  BACKGROUND

This action involves Transwestern's condemnation of property for an easement, for the purpose of constructing the approximately 260-mile expansion of Transwestern's existing natural gas pipeline in accordance with a Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission ("FERC") on November 15, 2007.  By order dated June 19, 2008, the court granted the parties' stipulation allowing Transwestern's immediate entry and possession of defendants' real property described in Exhibit 2 to the Complaint, consisting of a 50-foot-wide permanent easement, temporary workspace, and temporary access roadway, transecting three parcels of property located in unincorporated Pinal County, Arizona, referred to by the parties as the Midway Properties.[1]  The Transwestern pipeline transects the Midway Properties parallel to two preexisting natural gas pipelines.  The Midway Properties are subject to a development agreement approved by Pinal County in 2000.[2]

The remaining issues in this condemnation action involve determining the fair market value of the 50-foot-wide easement, and the existence and amount of severance damages to the remaining property.  In its briefing, Transwestern defined "severance damages" as "any decrease in market value to the unencumbered portion of the parcel located outside of the permanent easement taken by Transwestern, arising from the taking of the easement."[3]

---

[1]Doc. 66.

[2]Doc. 119 at pp. 2-3; doc. 118 at p. 2.

[3]Doc. 118 at p. 2.

Defendants proffered the expert report and testimony of H. Pike Oliver on the issue of severance damages.[4] Oliver, who is currently a Senior Lecturer for Cornell University's Program in Real Estate, states that the conclusions in his expert report are based on his "long-standing experience and background in urban planning and land development" and on his review of a 2004 Transportation Research Board report, a report concerning the "Potential Risks to the Agua Fria Development from the Proposed Transwestern Natural Gas Transmission Pipeline Maricopa County, Arizona" prepared in December 2008 by LFR, Inc., and two engineering reports prepared for the Town of Buckeye.[5]

Based on his review of the above reports, Oliver concludes that a "525 foot setback is the likely minimum that will ultimately be established for areas where structures have yet to be constructed, which is the situation with respect to the Midway Properties."[6] Oliver states that based on this 525-foot setback standard, staff of W Holdings calculated that 254.2 acres of the Midway Properties would fall within the setback zone. Oliver opines that in addition to the loss of acreage, "the imposition of the setback will have other significant adverse impacts on the property owner," such as requiring "re-evaluation and amendment of the land use plan for the entire larger property." Oliver contends that preparing a revised land use plan will cost defendants "upwards of several hundred thousand dollars" and will also "provide Pinal County with

---

[4] Doc. 118-1.

[5] Doc. 118-1 at pp.36, 40.

[6] Doc. 118-1 at p. 40.

the opportunity to reduce or rescind the development impact fee exemption. Such a change could result in [a] fee increase of $50,000 to $100,000 per acre - or more than a half billion dollars across the entire property."[7]

### III. DISCUSSION

"Federal Rule of Evidence 702 allows admission of 'scientific, technical, or other specialized knowledge' by a qualified expert if it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"[8] "Rule 702 requires that a testifying expert be 'qualified as an expert by knowledge, skill, experience, training, or education.'"[9] Expert testimony is admissible under Rule 702 if it is both relevant and reliable.[10] "The trial court must act as a 'gatekeeper' to exclude 'junk science' that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable."[11]

Transwestern first argues that Oliver's testimony is inadmissible under Rule 702 because Oliver is not qualified to express an expert opinion as to the appropriate setback from a pipeline or the effects of a such a setback on market value, development plans, or impact fees. Defendants argue that Oliver's "background and experience as

---

[7]Doc. 118-1 at p. 40.

[8]*Esayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (quoting Fed. R. Evid. 702).

[9]*Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004 (quoting Fed. R. Evid. 702)).

[10]*Daubert v. Merrell Dow Phars., Inc.*, 509 U.S. 579, 589 (1993).

[11]*Mukhtar*, 299 F.3d at 1063 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999)).

an urban planner who has worked for both governmental entities and later in private development of master planned communities particularly qualifies him to provide such opinions."[12]

While "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience," the advisory committee notes emphasize that "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[13] Here, while Oliver purports to rely on his experience in urban planning and land development, Oliver fails to explain how that experience leads to his opinion that a 525-foot setback will be imposed on the Transwestern pipeline, which will require amendment of the development agreement and result in higher impact fees; why his experience in urban planning and land development is a sufficient basis for his opinion; and, how his experience is reliably applied to the facts in this matter.

Transwestern next argues that Oliver's opinion concerning the hypothetical imposition of a 525-foot setback requirement on the Transwestern pipeline and amendment of the existing development agreement is not reliable. The court concurs. Oliver's opinion that government imposition of a setback requirement on the Transwestern pipeline is a "virtual certainty" and that a "525 foot setback is the likely minimum that will ultimately be established" is pure speculation and is not based on

---

[12]Doc. 119 at p. 10.

[13]Fed. R. Evid. 702 advisory committee's note.

Oliver's personal knowledge or experience.[14] Oliver's opinion that imposition of a setback requirement will require preparation of a revised land use plan, which will cost defendants "upwards of several hundred thousand dollars" and could result in increased development impact fees, is also purely speculative.

Transwestern further contends that Oliver's testimony is irrelevant because it does not address the remaining issues in this action, namely the fair market value of the 50-foot-wide easement and the existence and amount of severance damages. Defendants argue that Oliver's expert testimony is relevant because it is "directly related" to "public perceptions and their market effect." Defendants specifically argue that Oliver "opines that a prudent and well-informed potential buyer of the Midway project would anticipate that the County would impose a setback requirement that severely impacted to develop the project."[15] Contrary to defendants' argument, Oliver does not address public perceptions and their market effect in his expert report. Because Oliver is not qualified as an expert by knowledge, skill, experience, training, or education, and his expert report and testimony based thereon are neither reliable nor relevant, the court will exclude expert testimony by H. Pike Oliver. His expert report concerning severance damages will also be excluded.[16]

---

[14]Doc. 118-1 at pp. 36, 40.

[15]Doc. 119 at p. 15.

[16]The report itself could be excluded as hearsay even if Oliver were permitted to testify.

## IV.  CONCLUSION

For the reasons set out above, plaintiff's motion at docket 118 to exclude the testimony and expert report of H. Pike Oliver is **GRANTED**.

DATED this 8th day of April 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE